UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REUEL JACQUES ABALE GNALEGA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-cv-00514 (APM) |
| ) | |
| THE UNITED STATES, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION**

I.

Pro se Plaintiff Reuel Jacques Abale Gnalega claims that, on January 9, 2014, Dr. Michael Pfeiffer, a neurologist at the Washington D.C. Veterans Administration ("VA") Medical Center, negligently performed an electromyography ("EMG") test on his left ankle that caused permanent injury and pain. Decl. of Reuel Jacques Abale Gnalega, ECF No. 60 [hereinafter Gnalega Decl.], ¶¶ 1, 5. According to Plaintiff's sworn statement, the electrical stimulation administered was so strong that he "was thrown off the chair and fell onto the floor." *Id.* ¶ 10. Dr. Pfeiffer then allegedly said "he would turn down the machine" and conducted the EMG test twice more "before deciding to stop the test," which "hurt [Plaintiff] very badly." *Id.* ¶ 20. Afterwards, Plaintiff "remember[s] walking in the hallway of the VA hospital not knowing what had happened." *Id.* ¶ 23. He then began to suffer from "the tell tale signs of the survivor of a grave electrical shock: Amnesia, severe anxiety, [and] severe fatigue." *Id.* The EMG test also purportedly caused adverse physical effects. Plaintiff suffered "swelling [ ] at the location where the EMG machine was placed," and he "was badly shocked on [his] ankle and [he] developed a bump on it." *Id.* ¶ 29.

Plaintiff also remembers "a few days after that horrible Jan 9th 2014, when [he] couldn't feel [his] heart, [his] whole left side went numb," making him feel as if he "was looking death in the face." *Id.* ¶ 45.  These symptoms prompted Plaintiff to go to the emergency room "in the days after that EMG on January 9, 2014." *Id.*

One might think that receiving an electrical shock that felled him to the ground and the serious medical effects that followed would have made Plaintiff realize that Dr. Pfeiffer's allegedly botched EMG test was the cause for his ongoing foot and ankle pain.  Not so, says Plaintiff.  Claiming that "electrical shock equates to cranial trauma," *id.* ¶ 26, Plaintiff asserts that it did not occur to him until more than three years later—in May 2017—that the EMG test was the cause of his injuries, when a personal injury lawyer "explained to [him] that [his] ankle pain was disputed because it was not due to an earlier taxi[cab] accident [occurring] in July 2013." *Id.* ¶ 24.  Only then did Plaintiff file his administrative notice with the VA on May 31, 2017—more than a year after the Federal Tort Claims Act's ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80, two-year limitations period ostensibly expired, *see Norman v. United States*, 467 F.3d 773, 773–74 (D.C. Cir. 2006).

One other critical fact bears mention.  From the outset, Plaintiff has alleged that Dr. Pfeiffer conducted the EMG test.  Medical records, however, show that a different doctor performed the test—a Dr. Freidhelm Sandbrink—and that Dr. Pfeiffer only served as the "Referring Provider." Def.'s Mot. for J. on the Pleadings or, in the Alt., for Summ. J., ECF No. 56 [hereinafter Def.'s Mot.], Ex. A, ECF No. 56-2 [hereinafter Def.'s Ex. A], at 2.  That fact is crucial because Plaintiff's second theory of negligence is that the VA failed to disclose to Plaintiff that Dr. Pfeiffer is not a properly credentialed physician.  *See* Pl.'s Opp'n to Def's Mot., ECF No. 58 [hereinafter Pl.'s Opp'n], at 4–6.  That theory falls away, however, if another doctor performed the procedure.

2

Plaintiff nevertheless insists that Dr. Pfeiffer was the treating physician. He is "100% certain" of this, Gnalega Decl. ¶ 4, and posits that the medical records say otherwise because "it is plausible" that "Dr. Sandbrink may have been asked to go back into the medical record system" "to help cover up Dr. Pfeiffer's qualifications problem," *id.* ¶ 15.

II.

This matter is before the court on Defendant's third dispositive motion—this time a Motion for Judgment on the Pleadings or, In the Alternative, for Summary Judgment, ECF No. 56. The prior two motions sought dismissal of the complaint on the ground that Plaintiff's medical malpractice claim under the FTCA was barred by the statute's two-year limitations period. *See* ECF Nos. 17, 33. On the first motion, the court agreed that Plaintiff's FTCA claim as pleaded was untimely but permitted Plaintiff leave to amend. *See* Mem. Op. & Order, ECF No. 29 [hereinafter Mem. Op. & Order]. On the second motion, the court held that Plaintiff's amended complaint advanced a different, albeit related, theory of negligence that was not "conclusively time-barred"—namely, that the VA had concealed Dr. Pfeiffer's lack of credentials. *See* Order, ECF No. 40, at 2. The court observed that Plaintiff's primary theory of negligence likely was time-barred, i.e., that Dr. Pfeiffer negligently performed the EMG test, but ultimately decided to let both theories proceed as they were "closely intertwined." *Id.*

Defendant now seeks entry of judgment on its statute-of-limitations defense, as well as on Plaintiff's failure-to-disclose claim based on the medical records showing that Dr. Sandbrink, not Dr. Pfeiffer, performed the EMG test. *See generally* Def.'s Mot. Having considered the parties' arguments and the record evidence,[1] the court grants Defendant's motion.

---

[1] The court has not considered the evidence that Defendant submitted with its reply brief, including the supplemental declaration of Dr. Pfeiffer and newly proffered declaration of Dr. Sandbrink. *See* ECF Nos. 67-2, 67-3. This evidence raises a host of first-time factual assertions as to which Plaintiff has had no opportunity to seek discovery or respond. It would be unfair to consider such new proof.

3

III.

The parties' statute-of-limitations dispute centers on when Plaintiff's claim accrued. Defendant contends that the claim accrued either on the date the EMG test was performed, January 9, 2014, and in no event shortly thereafter. *See* Def.'s Mot. at 8. Plaintiff, on the other hand, asserts that the claim did not start to accrue until May 2017, when his lawyer advised him that the cause of his ankle pain was in dispute. *See* Pl.'s Opp'n 6–10; *see also* Gnalega Decl. ¶¶ 24–25. The court rejected Plaintiff's position when it granted Defendant's first motion to dismiss, finding that "Plaintiff [had] pleaded himself out of a timely cause of action." Mem. Op. & Order at 2. The court now confirms that decision based on the record evidence.

A medical malpractice claim under the FTCA accrues when the plaintiff knows "the critical facts that he has been hurt and who has inflicted the injury," even if he does not know that the injury was "negligently inflicted." *United States v. Kubrick*, 444 U.S. 111, 122–23 (1979). This standard places on an injured plaintiff the burden to "inquire into the unknown cause of a known injury." *In re Swine Flu Immunization Prods. Liab. Litig.*, 880 F.2d 1439, 1443 (D.C. Cir. 1989) (citing *Sexton v. United States*, 832 F.2d 629, 637 (D.C. Cir. 1987)). If the plaintiff knows the "historical facts associated with the injury itself," *Sexton*, 832 F.2d at 634, "he need only undertake a reasonably diligent investigation to determine whether a cause of action may lie." *Id.* at 633. Thus ordinarily, "a plaintiff's understanding of the basic nature of the treatment should suffice to begin the statute running." *Id.*

In this case, no reasonable jury could conclude that Plaintiff did not "understand the basic nature of the treatment" on January 9, 2014, the date the EMG test was performed, or shortly thereafter. Plaintiff readily admits to the immediate effects of the electrical shock: he "was thrown off the chair and fell onto the floor," Gnalega Decl. ¶ 10; he suffered "extreme" pain, *id.* ¶ 20;

4

within days of the test, his "whole left side went numb," *id.* ¶ 45, and he developed a bump on his ankle and swelling "at the location where the EMG machine was placed," *id.* ¶ 29; and he reported to the emergency room "in the days after that EMG on January 9, 2014," *id.* ¶ 45. Plaintiff thus attests to having both knowledge of the injury and what caused it on the day of the EMG test, or shortly thereafter. This is not a case where either the injury or its cause were anything other than immediately manifest. *Cf. In re Swine Flu*, 880 F.2d at 1443 (holding that a reasonable factfinder could determine that it was reasonable for the plaintiff not to make the connection between "relatively mild symptoms" and their cause).[2] The limitations period therefore accrued on January 9, 2014, and in no event within days thereafter when Plaintiff experienced pain so severe that he went to the emergency room.

Plaintiff seems to contend that his failure to timely file his administrative notice is excusable because the electrical shock caused "[a]mnesia, severe anxiety, [and] severe fatigue," rendering him unaware of his injury's true cause until years later when his personal injury lawyer advised him that there was a dispute as to reason for his ankle pain. Gnalega Decl. ¶¶ 23–24. But Plaintiff's claimed "amnesia" cannot create a genuine dispute of material fact to delay accrual of his claim. For one, Plaintiff cannot point to a conflict within his own testimony to create a genuine dispute of material fact. *Cf. Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1123 (D.C. Cir. 1991) ("Courts have long held that a party may not create a material issue of fact simply by contradicting its prior sworn testimony." (collecting cases)); *Antoine v. J.P. Morgan Chase*

---

[2] Nor has Plaintiff shown that he conducted a reasonable inquiry into the cause of his injury. *See In re Swine Flu*, 880 F.2d at 1443. True, Plaintiff visited doctors to complain of ankle pain in the ensuing years, and those doctors did not affirmatively identify the EMG test as the cause. *See* Gnalega Medical Records Attachments to Affidavit, ECF No. 60-5. But Plaintiff offers no evidence that he actually notified any subsequent treating physician of the botched EMG test. That omission rendered unreasonable any later inquiries he may have made as to cause with other physicians. *Cf. In re Swine Flu*, 880 F.2d at 1443–44 (holding that a plaintiff would have had a duty to inform her doctor of the potential cause, i.e., a vaccination, had there been evidence of general public awareness of the connection between the cause and injury).

5

*Bank*, 757 F. Supp. 2d 19, 24 (D.D.C. 2010) ("Of course, self-contradictory testimony does not create a material issue of fact." (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999)). Plaintiff's claimed "amnesia" directly conflicts with his otherwise detailed recitation of what occurred during the EMG test and its aftermath. Moreover, "a mere unsubstantiated allegation . . . creates no 'genuine issue of fact' and will not withstand summary judgment." *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Plaintiff offers no expert testimony or corroborating medical evidence to support his claim of amnesia in the years following the EMG test. Finally, Plaintiff's claim of "amnesia" appears to be shorthand for a lack of knowledge that his injury was negligently inflicted. But, of course, the absence of such knowledge does not delay accrual of the FTCA limitations period. *See Kubrick*, 444 U.S. at 122–23. In short, Plaintiff's claim of suffering from amnesia and mental distress creates no genuine dispute of material fact as to when his malpractice claim accrued. His FTCA malpractice claim is therefore untimely.

IV.

Plaintiff's alternative theory of negligence—that the VA failed to disclose Dr. Pfeiffer's lack of proper credentials—also fails on this record. The medical records from January 9, 2014, clearly show that Dr. Sandbrink, not Dr. Pfeiffer, administered the EMG test to Plaintiff. Def.'s Ex. A at 2. His theory of negligent non-disclosure therefore falters before it gets out of the starting gate.

Plaintiff tries to avoid this result by attesting that he is "100% certain" that Dr. Pfeiffer performed the EMG test. Gnalega Decl. ¶ 4. But Plaintiff's professed certainty does not create a genuine dispute of fact as to the identity of his treating physician. Courts may "lawfully put aside testimony that is so undermined as to be incredible." *Chenari v. George Washington Univ.*, 847 F.3d 740, 747 (D.C. Cir. 2017) (quoting *Robinson v. Pezzat*, 818 F.3d 1, 10 (D.C. Cir. 2016)).

"That scenario is 'most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury.'" *Id.* (quoting *Johnson v. Wash. Metro. Area Transit Auth.*, 883 F.2d 125, 128 (D.C. Cir. 1989), *abrogated on other grounds by Robinson v. District of Columbia*, 580 A.2d 1255, 1258 (D.C. 1990)).  Each of those elements is present here.  Plaintiff's identification of Dr. Pfeiffer hinges solely on his own self-serving testimony; that testimony is not supported by any corroborating evidence; and the VA's medical records undermine his identification.  Plaintiff tries to call into doubt the last of these factors, asserting that the medical records are "clearly suspect."  Gnalega Decl. ¶ 17.  But Plaintiff offers no reason to question the authenticity or accuracy of the medical records, or to doubt Dr. Pfeiffer's sworn affidavit, which establishes the records' admissibility for the truth of the matters asserted.  *See* Decl. of Dr. Michael H. Pfeiffer, ECF No. 56-1, ¶ 5; Fed. R. Evid. 803(6).  Plaintiff also hypothesizes, based on no evidence, that Drs. Pfeiffer and Sandbrink might have falsified the medical records to "help cover up Dr. Pfeiffer's qualifications problem."  Gnalega Decl. ¶ 15.  Such speculation is insufficient to create a genuine dispute of material fact.   Accordingly, Plaintiff's negligent non-disclosure theory fails.

V.

Finally, Plaintiff's declaration and opposition brief can be read to assert that entry of judgment at this juncture is premature and that additional discovery would enable Plaintiff to survive summary judgment. *See, e.g.,* Gnalega Decl. ¶ 17; Pl.'s Opp'n at 2–3.  But Plaintiff identifies no evidence that would enable him to overcome the fatal defects of his case, does not explain why he could not produce such facts in opposition to Defendant's motion, and fails to

7

show that the additional facts he needs through discovery are available. *See Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99–100 (D.C. Cir. 2012).

VI.

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment, ECF No. 56, is granted and judgment will be entered in favor of Defendant. A final, appealable order accompanies this Memorandum Opinion.

Dated: July 31, 2020

Amit P. Mehta
United States District Court Judge